**Steven BOLINGER, Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. C9–01–2134.**

Court of Appeals of Minnesota.

June 18, 2002.

---

John M. Stuart, Minnesota Public Defender, Rochelle R. Winn, Assistant Public Defender, Minneapolis, for appellant.

Mike Hatch, Attorney General, Natalie E. Hudson, Assistant Attorney General, Mathew T. Torgerson, Certified Student Attorney, St. Paul, and Craig S. Nelson, Freeborn County Attorney, Albert Lea, for respondent.

Considered and decided by RANDALL, Presiding Judge, STONEBURNER, Judge, and HUSPENI, Judge.*

## OPINION

STONEBURNER, Judge.

Appellant contests an order denying his postconviction petition for relief on the grounds that his plea to controlled-substance crime in the second degree was not knowingly and voluntarily made, was inaccurate, and lacked the required factual basis because appellant was questioned about a different offense at the plea hearing. We reverse and remand.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

In June 1999 appellant Steven Douglas Bolinger made two controlled-substance sales to an undercover police officer. On June 1, 1999, appellant allegedly sold four "ten-strips" [1] of lysergic acid diethylamide (LSD) to an undercover officer and gave a fifth "ten-strip" to the officer for free. This sale occurred in front of a bar. On June 21, 1999, appellant sold the undercover officer five more "ten-strips" of LSD in a parking lot by an apartment complex. Both sales were tape-recorded.

The state charged appellant with the following crimes:

Count 1: Controlled-substance crime, 2nd Degree * * *

In Violation Of: 152.022 Subd. 1(3), Subd. 3(a) * * *

The defendant, in Freeborn County, did on 6/1/99 unlawfully sell one or more mixtures containing an hallucinogen equaling 50 or more dosage units.

Count 2: Controlled-substance crime, 2nd Degree * * *

In Violation Of: 152.022 Subd. 1(3), Subd. 3(a) * * *

The defendant, in Freeborn County, did on 6/21/99 unlawfully sell one or more mixtures containing an hallucinogen equaling 50 or more dosage units.

The complaint was amended 12 days later to add facts to the probable-cause portion of the complaint. The first amended complaint continued to charge the June 1 sale as Count 1 and the June 21 sale as Count 2. Approximately two months later the state again amended the complaint. The second amended complaint charges the

---

1. A "ten-strip" is a term used to describe a quantity of LSD that commonly contains ten dosage units. The actual dosage units on these "ten-strips" are not easily counted.

June 1 sale as a third-degree controlled-substance crime because the Bureau of Criminal Apprehension (BCA) determined that the actual quantity of LSD appellant sold on June 1 was only 37 dosage units. In the second amended complaint, the June 1 third-degree sale is the subject of Count 2 and the June 21 second-degree sale is the subject of Count 1.

On May 8, 2000, appellant filed a rule 15 petition in which the plea agreement is stated as: "Plea to Count 1 & Dismiss Count 2. Cap on jail time of presumptive sentence. No argument for upward departure." The rule 15 petition reflects that appellant was told that the maximum penalty that could be imposed was "25 years $500,000 fine," which is the penalty for a second-degree controlled-substance crime.

At the plea hearing, the district court identified the charge appellant had agreed to plead to as having occurred "on June 1, 1999 * * * sale of LSD, 2nd degree * * *. That carries with it the maximum penalty of * * * 25 years imprisonment and/or a $500,000 fine." After preliminary questions to establish that appellant had discussed the plea with counsel and knew the rights he was waiving by pleading guilty, the district court asked defense counsel to question appellant to "lay the basis for the elements of this charge."

Defense counsel, without objection from the prosecutor or correction by the court, proceeded to question appellant about the June 1, 1999 incident. Appellant testified that he was at the Palace Bar in Albert Lea on that date and sold drugs. Appellant was asked:

Q. And the BCA did an analysis on those drugs and it turned out to be at least 50 dosage units of LSD in a packet?

A. Yes.

Q. You are not disputing those results, that evidence at all?

A. No.

At the conclusion of defense counsel's questioning, the district court asked the prosecutor if he wanted to establish anything else for the plea and the prosecutor responded, "No, Your Honor, just that the—specifically the June 1 incident involved 53 dosage units according to the BCA report." Appellant was not asked about this statement, but defense counsel agreed with the statement on the record despite the fact that it is undisputed that the June 1, 1999, incident at the Palace Bar involved the sale of only 37 dosage units of LSD. The district court accepted the plea and granted the prosecutor's motion to dismiss "Count 2."

Despite the fact that the factual basis established at the plea hearing identified the sale as occurring on June 1 at the Palace Bar, the pre-sentence investigation report describes the conviction as the offense that occurred on June 21, 1999, in the parking lot of the Channelview apartments in Albert Lea. Defendant was sentenced to 64 months for controlled-substance crime in the second degree.

More than a year later, appellant moved for a modification of his sentence, arguing that he pleaded to the third-degree controlled-substance charge and should not have been convicted and sentenced for the second-degree controlled-substance offense. The district court treated the motion as a motion for postconviction relief and granted a hearing.

At the hearing, appellant argued that he never intended to plead to the second-degree controlled-substance crime and was under the impression that he was pleading to the lower charge. Appellant argued that he agreed to plead to Count 1, believing it to be the June 1 sale that was reduced to a lesser charge than the June

sale. The state argued that appellant, in his written plea petition, agreed to plead to "Count 2" and that on the record, defense counsel stipulated that appellant sold 53 dosage units. The postconviction court denied appellant's motion. The court stated:

Now, it could be that I misread it and went to June 1 instead of June 21. However, after I said that it was a sale of LSD 2nd degree 152.022 subdivision 1(3), subdivision 3(a), it carries with [it] a maximum penalty of 25 years imprisonment and/or a $500,000 fine, none of that refers to count number 2, none whatsoever. If there was a mistake on the date, it may have been the court's error in saying June 1, but * * * there is no question in my mind that at the time you offered the plea * * * it was all to Count 1 and everything that refers everywhere else refers to basically the fact that you are pleading guilty to Count 1.

[Your attorney] went through with all the factors that you understood what was going on and who you sold it to and so forth and he * * * talked about the plea to Count 1 and not to count 2[2] * * *. So I have to at this point in time deny your request.

[T]here may have been that error as far as the date, but everything else is just overwhelmingly supporting the position that you pled guilty to Count 1.

Appellant then petitioned for postconviction relief, arguing that his plea was not knowingly and voluntarily entered and again requested that his conviction be treated as a third-degree controlled-substance crime conviction and his sentence amended accordingly. The court denied the petition without a hearing, concluding

that appellant was not entitled to relief. This appeal followed.

## ISSUES

I. Did the postconviction court abuse its discretion by denying appellant's petition for postconviction relief without giving him the opportunity to withdraw his plea where the factual basis for the plea described the events related to a separate, third-degree controlled-substance offense that occurred on a different date, at a different location, and involved a different amount of drugs sold from the crime of which appellant was convicted?

II. Did the postconviction court abuse its discretion by denying appellant's request to reduce his sentence to reflect a third-degree controlled substance charge?

III. Was appellant's petition for postconviction relief untimely?

## ANALYSIS

This court reviews the decisions of the postconviction court under an abuse-of-discretion standard. *State v. Rainer*, 502 N.W.2d 784, 787 (Minn.1993). "On appeal, the scope of our review is limited to the question of whether there is sufficient evidence to sustain the findings of the postconviction court." *State v. Ecker*, 524 N.W.2d 712, 716 (Minn.1994).

Although the specific relief appellant requested in his pro se petition for postconviction relief was an amended sentence, he argues that the circumstances entitle him to withdraw the plea. Under these facts, it is appropriate to review the petition as a petition to withdraw the plea of guilty.

A reviewing court will reverse the district court's determination of wheth-

---

**2.** It appears that the district court was unaware that defense counsel had questioned appellant about Count 2, the June 1 incident at the Palace Bar, rather than Count 1, the June 21 incident in the parking lot.

er to permit withdrawal of a guilty plea only if the district court abused its discretion. *Barragan v. State,* 583 N.W.2d 571, 572 (Minn.1998). There is no absolute right to withdraw a guilty plea after it is entered. *Kim v. State,* 434 N.W.2d 263, 266 (Minn.1989). But if a defendant demonstrates that "withdrawal is necessary to correct a manifest injustice," the district court shall permit withdrawal after sentencing. Minn. R.Crim. P. 15.05, subd. 1. "Manifest injustice occurs if a guilty plea is not accurate, voluntary, and intelligent." *Perkins v. State,* 559 N.W.2d 678, 688 (Minn.1997).

## I.

■■■ Appellant argues that his plea was not accurate because he believed he was pleading to the events occurring on June 1, 1999, which, in fact, do not establish a second-degree controlled-substance offense despite the fact that he agreed with leading questions at the plea hearing about the amount of drugs sold on that date. The accuracy requirement in pleading is meant to protect the defendant from pleading guilty to a charge more serious than he could be convicted of if the case went to trial. *Ecker,* 524 N.W.2d at 716. "A proper factual basis must be established for a guilty plea to be accurate." *Id.* (citation omitted).

■■■ The state argues that, where the date is not an element of the crime, an inaccurate date does not invalidate an otherwise valid plea. But the statute and cases used to support this argument involve correct descriptions of the facts constituting the offense ascribed to an inaccurate date. *See* Minn.Stat. § 628.15 (2000); *see also State v. Fraser,* 277 Minn. 421, 421–23, 152 N.W.2d 731, 731–32 (1967)

(holding that defendant was not entitled to reversal on basis that complaint contained an allegedly erroneous date). Here, the court did not simply incorrectly state the date of the incident of the second-degree sale. Here, appellant was questioned about an entirely different incident to establish the factual basis for the plea.

The state cites *State v. Warren* for the proposition that a court can rely exclusively on a sworn complaint to establish a factual basis for a guilty plea.[3] *See State v. Warren,* 419 N.W.2d 795, 799 (Minn. 1988). But *Warren* "concerns use of a misdemeanor plea in computing a defendant's criminal history score." *Id.* at 797. And, in *Warren,* the supreme court specifically distinguishes the Warren analysis from withdrawal-of-plea analysis because

> [t]he situation is not quite the same * * * when the defendant is not trying to set aside the prior conviction but is challenging the conviction collaterally, seeking only to prevent its use for enhancement purposes.

*Id.* at 798. The Warren holding, then, applies when the defendant is challenging the conviction only collaterally and to prevent its use for sentence enhancement and not for withdrawal-of-plea purposes.

Here, it is undisputed that the court, prosecutor, and defense counsel intended for appellant to plead guilty to the second-degree controlled substance charge and establish a factual basis by discussing the facts surrounding the June 21, 1999 sale. Instead, defense counsel questioned appellant about the June 1 sale, and both defense counsel and the prosecutor misstated the dosage units sold on that date. Appellant's argument that he thought he was pleading to the lesser charge is plausible

---

**3.** Use of the complaint alone is also problematic because the amended complaint clearly states that the June 1 incident was a sale of 37

dosage units of LSD, which led to a third-degree controlled-substance charge.

given the switch in numbering the counts in the second amended complaint and the questioning that occurred at the plea hearing.

■ "[The] sentencing judge has the primary responsibility for eliciting from defendant the testimony needed to establish a factual basis for the guilty plea." *Perkins,* 559 N.W.2d at 689 (quotation omitted). But attorneys are officers of the court with a duty to act with due diligence and candor toward the court. Minn. R. Gen. Pract. 2.03(a); Minn. R. Prof. Conduct 1.3 and 3.3. Both attorneys asserted that appellant had sold more than 50 dosage units of LSD on June 1, 1999—an assertion that is not in the complaint. We do not imply that the attorneys intentionally misled the court or appellant, but more careful attention to the record being made would have prevented this unfortunate error. The prosecutor and defense counsel share the court's burden to reasonably ensure that pleas are accurately made on the record. The interests of justice are not served by requiring appellant to bear the consequences of the erroneous questioning in this case.

An erroneous factual basis was placed on the record that does not support appellant's plea to the charge against him contained in Count 1 of the second amended complaint. We conclude that the postconviction court abused its discretion by not allowing appellant the opportunity to withdraw his plea and to stand trial on the charges against him.

## II.

Because appellant provides no legal basis for modifying his sentence, we decline to address the issue. *See State v. Fischer,* 354 N.W.2d 29, 35 (Minn.App.1984) (declining to reach issue where argument is unsupported), *review denied* (Minn. Dec. 20, 1994).

## III.

■ The state argues that the postconviction court did not abuse its discretion by denying appellant's petition for postconviction relief because appellant's petition was untimely. A delay in seeking relief is a relevant consideration in determining whether the court should grant relief. *Fox v. State,* 474 N.W.2d 821, 826 (Minn. 1991) (holding that four-year delay in petitioning for postconviction relief weighed against appellant).

■ Appellant, in his initial petition to modify his sentence to reflect a third-degree controlled-substance conviction, used a withdrawal-of-plea analysis to support his argument that he was sentenced for the wrong charge. The state should have been on notice that allowing appellant to withdraw his plea was a potential outcome of the errors that occurred with regard to the plea. The delay, then, is from the date of sentencing to the date of appellant's petition, approximately one year and two months.

Even if we considered the petition untimely, we must further consider what prejudice the granting of a petition to withdraw a guilty plea would cause the prosecution "as a result of defendant's untimely request to stand trial." *State v. Lopez,* 379 N.W.2d 633, 637 (Minn.App. 1986) (emphasis omitted) (quoting *United States v. Russell,* 686 F.2d 35, 39 (D.C.Cir. 1982)), *review denied* (Minn. Feb. 14, 1986). Here, the state has not alleged that any prejudice would occur by granting a petition to withdraw, and, in the interests of justice, we decline to hold that appellant's petition is barred as untimely.

## DECISION

The postconviction court abused its discretion by denying appellant's petition for

postconviction relief without giving appellant an opportunity to withdraw his plea because appellant's plea to a second-degree controlled-substance crime lacked a proper factual basis and was inaccurate. The court did not abuse its discretion by denying appellant's petition to modify his sentence.

**Reversed and remanded.**